UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - -X
UNITED STATES OF AMERICA 14-CR-102(WMS)

vs.

Buffalo, New York
GREGORY KWIATKOWSKI, RAYMOND May 7, 2015
KRUG AND JOSEPH WENDEL, 2:08 p.m.
Defendants.
- - - - - - - - - - - - - - -X

TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE H. KENNETH SCHROEDER, JR.
UNITED STATES MAGISTRATE JUDGE

WILLIAM J. HOCHUL, ESQ.
United States Attorney
BY: PAUL J. CAMPANA, JR., ESQ.
Assistant United States Attorney
138 Delaware Avenue
Buffalo, New York 14202

LIPSITZ GREEN SCIME CAMBRIA, LLP
BY: PAUL J. CAMBRIA, ESQ.
42 Delaware Avenue, Suite 120
Buffalo, New York 14202
Appearing on behalf of Gregory Kwiatkowski

CONNORS & VILARDO, LLP
BY: TERRENCE M. CONNORS, ESQ.
1000 Liberty Building
424 Main Street
Buffalo, New York 14202
Appearing on behalf of Raymond Krug

PERSONIUS MELBER, LLP
BY: RODNEY O. PERSONIUS, ESQ.
2100 Main Place Tower
350 Main Street
Buffalo, New York 14202
Appearing on behalf of Joseph Wendel

TRANSCRIBER: Christi A. Macri, FAPR-CRR
Kenneth B. Keating Federal Building
100 State Street, Room 2120
Rochester, New York 14614

(Proceedings recorded by electronic sound recording, transcript produced by computer).

**P R O C E E D I N G S**

* * *

(**WHEREUPON**, the defendants are present).

**THE CLERK:** United States vs. Kwiatkowski, et al. docket number 14-CR-102, this is a status conference.

Assistant United States Attorney Paul Campana appearing on behalf of the Government.

Paul J. Cambria, Jr., appearing with defendant Gregory Kwiatkowski.

Terrence M. Connors appearing on behalf of Raymond Krug.

And Rodney O. Personius appearing on behalf of Joseph Wendel.

**MAGISTRATE JUDGE SCHROEDER:** Good afternoon.

**MR. CAMPANA:** Good afternoon.

**MR. CAMBRIA:** Good afternoon.

**MR. PERSONIUS:** Good afternoon.

**MR. CONNORS:** Good afternoon.

**MAGISTRATE JUDGE SCHROEDER:** I scheduled this conference because I need additional or further information from the Government on the *Kastigar* issue.

**MR. CAMPANA:** Do you mean *Garrity*, Your Honor?

**MAGISTRATE JUDGE SCHROEDER:** Pardon me?

**MR. CAMPANA:** Do you mean *Garrity*?

**MAGISTRATE JUDGE SCHROEDER:** *Garrity* and -- the

issue of the box of materials that was subpoenaed consisting of, as I understand it, the investigation materials conducted by the Buffalo Police Department Inspector General or -- yeah, the --

**MR. CAMPANA:** Professional standard.

**MAGISTRATE JUDGE SCHROEDER:** -- professional services standard. That after they completed their investigation, they had this quantity of materials relating to that investigation and that those materials were subpoenaed by the Government, put in a box and delivered to the United States Attorney's Office here in Buffalo.

As I read the case law, the immunized testimony of the officers cannot be used in any prosecution against them, nor can any information obtained by that immunized testimony be used if that immunized testimony is the source of the information obtained.

Does anybody disagree with me up to this point?

**MR. CAMPANA:** No.

**MAGISTRATE JUDGE SCHROEDER:** Okay. So the question then, as I understand it, by the defense motions is the box of materials subject to the Government subpoena was derived from or a source of information arising out of the immunized testimony of the officers in this case.

**MR. CAMPANA:** I'm not sure I understand what the Court just said. The Professional Standards conducted an

investigation, as I understand the way they always do, based on information they gather, some of which is statements made by the defense, the subjects of that investigation, and when the Government always takes care not to look at those -- at the statements they make.

**MAGISTRATE JUDGE SCHROEDER:** I'm going to get to that point, that verb "look." That's why I need more information.

I'm starting with the premise that any information which is -- its source is the immunized testimony, that information can't be used.

**MR. CAMPANA:** I agree with that to the extent it means that if the Government has seen or read the statement of the subjects of those investigation -- of that investigation made under compulsion, the Government must not -- must take care not to do that.

And if it does see -- if it does do that, it would have to demonstrate that nothing it learns was based --

**MAGISTRATE JUDGE SCHROEDER:** I think that's too narrow an interpretation. Let me give you a hypothetical, and I realize it doesn't apply in this case.

But if the police officers are supposedly accused of being involved in narcotics distribution as part of a internal investigation, and they answer questions under compulsion, and as part of that one of them says, yeah, we

take the stuff that we take from drug distributors that we arrest and we take 10% of that and stash it in a police locker here at headquarters, my understanding of the case law is not only can you not use the statements of the police officers, you can't use the narcotics that they find in the police locker because that -- the source of that information is the immunized testimony.

It's the opposite of the fruit of the poison tree, so to speak.

**MR. CAMPANA:** I don't know that that's the law, Your Honor. I don't know that whatever the police department uses in their investigation becomes somehow unusable --

**MAGISTRATE JUDGE SCHROEDER:** Well, it all comes to this basic concept of Fifth Amendment compulsion. And if the source of information is the compelled statement or compelled testimony, it's a source or a fruit of that compulsion.

**MR. CAMPANA:** I think that in addition to submitting whatever factual information the Court needs as to the --

**MAGISTRATE JUDGE SCHROEDER:** Well, let me jump ahead. There's no question, I gather, from the Government's point of view that you issued a subpoena for materials that were part of the internal investigation by the Buffalo Police Department.

**MR. CAMPANA:** Yes.

**MAGISTRATE JUDGE SCHROEDER:** And those materials were delivered to the U.S. Attorney's Office, and I say in a box.

**MR. CAMPANA:** They're delivered to the Government, yes.

**MAGISTRATE JUDGE SCHROEDER:** Okay. And then in your affidavit you say "no FBI agents have seen any such material."

Well, "see" is a very limited thing.

**MR. CAMPANA:** They didn't see anything.

**MAGISTRATE JUDGE SCHROEDER:** My question I have, the fact that you didn't see it doesn't mean you didn't learn something. Somebody might have said something.

Now, if I assume that a box of materials is delivered to the Government either at the FBI office or the U.S. Attorneys, wherever, pursuant to a subpoena, somebody's got to take possession of that. And then somebody now has a box, I got to believe they say I wonder what's in this or who does this go to or what's this for? And they have to do some kind of examination. And then they make some determination it goes to Special Agent Jones or it goes to Assistant U.S. Attorney Campana, it goes someplace.

Now, using the verb "see," somebody must have seen something in that box in order to make that kind of a determination.

**MR. CAMPANA:** We can -- we can elaborate further, Your Honor, and we will --

**MAGISTRATE JUDGE SCHROEDER:** Let me go through the whole scenario so we only do this once.

**MR. CAMPANA:** Okay.

**MAGISTRATE JUDGE SCHROEDER:** And then whoever gets this material, I don't know what they do with it. Do they immediately say oh, no, we can't look at this, we've got to send this down to the special unit in Washington? Or do they look at it to say oh, yeah, this is in compliance with the subpoena, but now I've learned something? Or somebody tells them what they read in there, the guy that just received the box says oh, yeah, there's transcripts of testimony that were given by the officers when they were interviewed as part of the internal investigation and basically what they said is that ta da, ta da, ta da.

Then that stuff appears to become tainted. So my concern is the limitation of "no FBI agents have seen" I don't think does it for the Government because I think you'll agree under the case law the Government has a heavy burden of establishing lack of taint.

And let me cite to you *United States vs. Nemes*, 555 F.2d 51, 55, which basically holds that the mere assertion that the prosecutor had no access to the grand jury minutes or that the immunized testimony was not used is insufficient.

So before I can make a decision, what I really want to know is almost on a step-by-step procedure kind of like chain of custody what went on from the time the subpoena was served and the materials were produced.

**MR. CAMPANA:** We'll do that for you.

**MAGISTRATE JUDGE SCHROEDER:** Pardon me?

**MR. CAMPANA:** We will do that.

**MAGISTRATE JUDGE SCHROEDER:** Okay. Then, of course, the defense will have an opportunity to respond, and then I'll be able to hopefully make a reasoned decision.

**MR. CAMPANA:** Will the Court set a date upon which --

**MAGISTRATE JUDGE SCHROEDER:** Yeah, I want to set a deadline for doing this. How much time do you think you're going to need?

**MR. CAMPANA:** Well, why don't I ask for three weeks from today?

**MAGISTRATE JUDGE SCHROEDER:** Defendants' attorneys have any problem with that?

**MR. PERSONIUS:** No, Your Honor.

**MR. CAMBRIA:** No.

**MAGISTRATE JUDGE SCHROEDER:** All right. So the Government is to submit a more detailed recitation of what I'll call the transmittal of the subpoenaed materials and where they went and what was done with them.

Today is the 7th. I'll give you until the 22nd, Friday, of May.

How much time are the defendants going to need to respond?

**UNIDENTIFIED SPEAKER:** Two weeks.

**MAGISTRATE JUDGE SCHROEDER:** Two weeks. So that will be June 12th.

**UNIDENTIFIED SPEAKER:** Is that a Friday also?

**MAGISTRATE JUDGE SCHROEDER:** That's Friday also.

**MR. PERSONIUS:** Thank you, Judge.

**MAGISTRATE JUDGE SCHROEDER:** And then I'm not sure whether I'm going to need oral argument or not. I mean, I understand the positions of the defendants and I think you've heard what my thinking is on the case law.

Is there anything that you think that I will need enlightening on as far as that law is concerned?

**UNIDENTIFIED SPEAKER:** I would think, Judge, if we thought we needed some, we could --

**MAGISTRATE JUDGE SCHROEDER:** Ask for oral argument? Okay. Now, in the meantime because these are defendants' motions that are pending, do each of the defendants acknowledge and agree that the speedy trial clock has been stopped by reason of the filing of those motions and that it will continue to remain stopped and the time not charged against the Government for purposes of the Speedy Trial Act

until those motions have been resolved?

**MR. CONNORS:** I do on behalf of Mr. Krug.

**MR. PERSONIUS:** Yes, Your Honor, on behalf of Officer Wendel.

**MR. CAMBRIA:** Yes. And Mr. Kwiatkowski is here, Your Honor.

**MAGISTRATE JUDGE SCHROEDER:** Anything else, gentlemen?

**MR. CAMBRIA:** No.

**MAGISTRATE JUDGE SCHROEDER:** Thank you.

**MR. PERSONIUS:** Thank you, Judge.

(**WHEREUPON**, the proceeds adjourned at 2:20 p.m.)

* * *

**CERTIFICATE OF TRANSCRIBER**

In accordance with 28, U.S.C., 753(b), I certify that this is a true and correct record of proceedings from the official electronic sound recording of the proceedings in the United States District Court for the Western District of New York before the Honorable H. Kenneth Schroeder on May 7th, 2015.

S/ Christi A. Macri

Christi A. Macri, FAPR-CRR
Official Court Reporter