UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

USA, * Docket No. 1:14-cr-00102-WMS-HK

Plaintiff, *

* Buffalo, New York
v. * November 8, 2017
* 10:17 a.m.

GREGORY KWIATKOWSKI, *
RAYMOND KRUG, * STATUS CONFERENCE
JOSEPH WENDEL, *
*
Defendants. *
* * * * * * * * * * * * * * * *

TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE WILLIAM M. SKRETNY
UNITED STATES DISTRICT JUDGE FOR
THE WESTERN DISTRICT OF NEW YORK

APPEARANCES:

For the Plaintiff: JAMES P. KENNEDY, JR., ESQ.
United States Attorney
By AARON S. MANGO, ESQ., and
MARY C. BAUMGARTEN, ESQ.,
Assistant United States Attorneys
Federal Centre
138 Delaware Avenue
Buffalo, New York 14202

For the Defendant: TERRENCE M. CONNORS, ESQ.
CONNORS LLP
1000 Liberty Building
Buffalo, New York 14202-1687
RODNEY O. PERSONIUS, ESQ.,
Personius Melber LLP,
2100 Main Place Tower,
Buffalo, New York 14202,

Court Reporter: MARY E. BLACK.
Notary Public
Jack W. Hunt & Associates, Inc.
1120 Liberty Building
Buffalo, New York 14202
(716) 853-5600

Proceedings recorded by mechanical stenography,
transcript produced by computer.

**COURT CLERK:** Criminal 14-102. United States of America versus Raymond Krug and Joseph Wendel.

**THE COURT:** Okay. And let's start with refamiliarizing myself with who the prosecutors are in this case for the record.

**MS. BAUMGAURTEN:** Good morning, Your Honor. Katie Baumgarten for the United States.

**THE COURT:** Good morning.

**MR. MANGO:** Good morning, Judge. Aaron Mango for the United States.

**THE COURT:** All right. Good morning, Mr. Mango.

All right. For the defense.

**MR. CONNORS:** Terry Connors for Ray Krug, Your Honor.

**THE COURT:** Mr. Connors, good morning.

**MR. PERSONIUS:** Rodney Personius for Mr. Wendel. Both the Defendants are here today, Your Honor.

**THE COURT:** Okay. They are, and they are in the gallery seated at the present time.

All right. I do have a bench statement with respect to the outstanding motions that still remain, and then we're going to talk about the December 5th trial date and readiness for trial.

If you want to stand, it won't take too long, but I've got about five or six pages.

**MS. BAUMGARTEN:** Judge, will we get a copy of that

before I start scribbling.

**THE COURT:** Not that I know of.

**MS. BAUMGARTEN:** Okay. So I'll scribble. Thank you, Judge.

**THE COURT:** Okay. All right. I have several pretrial motions that are before me and I'm ready to rule on those motions at this time. I'm not going to get into the facts. I mean, all of you know those at the present time. And the arguments, I'll make passing reference to the arguments.

But I'm going to start with the two Brady motions, Brady/Giglio motions that have been filed that seek information relating to co-Defendant Kwiatkowski and to the alleged victims.

The Government opposes those motions, contending that it has fully complied with its Brady duties by providing all relevant documents in its possession to the Defendants or to me for in camera review. Specifically, the Government has provided Defendants with updated arrest histories for the alleged victims as well as information regarding Kwiatkowski's mental health, and sought in camera review of Kwiatkowski's internal disciplinary file. I completed in camera review of that material and I issued a sealed decision granting a protective order, and finding that there was no basis for disclosure, because the information was not material and relevant, in my view, to this proceeding and therefore not subject to Brady disclosure. So, the defense motions are denied as moot.

Second, Defendants renew their request to admit evidence regarding a civil suit that the alleged victims in this case brought against them and the City of Buffalo. This is now the third time that this request has been made, and I had previously reserved decision as to admission of this evidence, finding that if, after direct examination of the alleged victims, defense counsel sought to pursue a line of questioning related to the civil suit, they could make a proffer outside the presence of the jury.

Defendants now request, though, a conditional ruling, specifically, that the defense be allowed to introduce evidence at the civil suit if the Government introduces the theory that the alleged victims would have been motivated by Kwiatkowski's earlier rough treatment, to which he has now pled guilty, to point the finger at him if he had actually been the shooter. Defendants argue that the alleged victims were instead incentivized by the civil suit to identify Krug and Wendel as the shooters, because it allowed them to name additional Defendants in the case, bolstered the potential exposure of the Buffalo Police Department, and undermined Krug and Wendel's value as witnesses. Defendants further argue that, although the alleged victims would not be driven by the same possible motivations in the criminal suit, they are now locked into the allegations made in the civil suit.

Defendants cite several cases standing for the

proposition that, when a witness has a personal motive to fabricate evidence, evidence supporting that motive is admissible, even if speculative, because it is critical to a defendant's defense. See United States versus Blum, 62 F.3d 63, 67, Second Circuit 1995, and Justice-Hoke 90 F.3d 43, Second Circuit 1996. The Government doesn't attempt -- does not attempt to distinguish these cases, nor has it stated whether it intends to make the argument that the victims were motivated to blame Kwiatkowski based on his earlier actions. Instead, it argues that I should continue to reserve decision as I previously had. The Government also argues that, if reference to the civil suit is allowed, evidence of the settlement paid to the alleged victims should also be admitted. Defendants have requested that they be allowed an opportunity to brief the admissibility of the settlement if this motion is granted.

Based on the precedent cited by the Defendants, I am persuaded that evidence of the civil suit is admissible to show bias if the Government advances the theory that the alleged victims would have been motivated to identify Kwiatkowski as the shooter because of his use of excessive force during the arrest. Accordingly, the motion is granted to the extent that, in the event that the Government introduces this theory, whether in its opening argument or at some later point, Defendants may introduce evidence of the civil suit in an attempt to undermine that theory.

However, I caution the parties again: I will not allow a trial within the trial. The evidence regarding the civil suit must be directly germane to this specific ruling. The remainder of my decision remains intact, that is the same, the defense may make a specific proffer after direct testimony and I will make a decision then as to whether any other evidence of the civil suit will be admitted to demonstrate bias.

Further, the parties may submit a short briefing regarding the admissibility of the civil settlement. Defendants' brief is due no later than November 15th; the Government's response is due no later November 22nd, 2017.

Okay. The motion to preclude.

Defendants Krug and Wendel renew their request to preclude testimony by Kwiatkowski regarding a conversation between the co-Defendants that occurred prior to Kwiatkowski's guilty plea, while all three Defendants were part of a joint defense agreement. Last year I granted Defendants' motion to preclude this testimony on the grounds that the conversation was covered by the attorney-client privilege. The Government appealed, and the Second Circuit reversed the decision on a de novo review, finding that the conversation was admissible.

Defendants, though, now argue that, even if the conversation was not privileged, it should be precluded under United States versus Barret, 848 F.3d 524, Second Circuit 2017. The parties have briefed this issue fully. Defendants' motion

to file a reply in further support is granted, and I have reviewed that reply as well as Government's supplemental filing on this issue.

In Barret, the Second Circuit held that the testimony of a former co-defendant, who pled guilty mid-trial, did not violate remaining Defendants' Sixth Amendment right to counsel absent a showing that the former co-defendant shared defense strategy, defense tactics, or any other confidences with the Government. The critical ingredient in Barret is not present here. Kwiatkowski pled guilty prior to trial. Therefore, as the Government notes, the prejudice that was alleged in that case is not present here. Defendants argue that Kwiatkowski's testimony reveals defense strategy, and that this was definitively held to be prejudicial by Barret. I disagree. Cooperation from co-defendants is very common, yet Defendants cite only to Barret in support of their preclusion argument, and I find that Barret is distinguishable.

Further, I am bound by the mandate rule to follow the Second Circuit's decision. Defendants presented the Barret argument to the Second Circuit already, both by a Federal Rule of Appellate Procedure Rule 28(j) letter, and by reading an excerpt of that decision during oral argument. The appeals panel stated at argument that Barret did not resolve this case, and Barret is not cited in the summary order. The mandate rule, quote, prevents re-litigation in the district court not only of

matters expressly decided by the appellate court, but also precludes re-litigation of issues impliedly resolved by the appellate court's mandate, closed quote. Brown versus City of Syracuse, 673 F.3d 141, 147, Second Circuit 2012. Therefore, although the mandate does not expressly address Barret, the broader, quote, spirit of the mandate, closed quote, suggests that the testimony is admissible. See United States versus Ben Zvi 242 F.3d 89, 95, Second Circuit 2001. Accordingly, the motion is denied.

Okay. Now, finally, we're going to talk about the jury venire, which is an issue that continues to surface, and both sides have filed memoranda setting out proposals as to how to proceed with jury selection, which was been complicated by the appeal that was taken in this case.

On December 6 and 7, 2016, a jury was selected in this case, consisting of 12 jurors and one alternate. On December 12th, 2016, the day that had been scheduled for opening statements and the start of the Government's proof, and before the chosen jurors had been sworn, I informed them, that is the jury, that an evidentiary issue had arisen, that their service was not complete, and that they would be called back once that issue was resolved.

Defendants request that the jurors be called in and, following additional voir dire, all who are able to serve be automatically reseated. That request is denied, based on

essentially the reasons set forth in United States versus Awadallah, because the Government has an interest, quote, in the opportunity to choose a complete jury at once, using its peremptory strikes strategically to obtain a desired whole, closed quote. 457 F. Supp. 2d 239, Southern District of New York 2006. Although we have not re-contacted the jurors, there is no doubt in my mind that at least one will be -- or will not be available, especially considering that at least one of the panel was visibly pregnant in December of 2016, and, in that case, additional jurors will need to be selected because there was only one alternate.

Nor does either side wish to follow the compromise set out in Awadallah, of putting the previously chosen jurors into a venire for a new full selection. The Government argues that the prior jurors may have an issue with impartiality due to having been told that there was an, in quote, evidentiary issue, closed quote. The Defendant seeks to simply automatically reseat the jurors without placing them back in the venire, arguing that any potential impartiality would be addressed by further questioning and by an instruction from the Court.

Aside from Awadallah, neither side cites a case where a jury was recalled after a year's delay. Defendants point to Downum versus United States, 372 U.S. 734 and 736, 1963, in which the Supreme Court reversed a conviction where the trial court discharged an already selected jury upon receiving notice

that the prosecution was not in a position to present a key witness at the scheduled starting date of trial, and a new jury was then selected and impaneled two days later, holding that the unavailability of a prosecution witness did not constitute an, in quote, extraordinary and striking circumstance, closed quote, justifying the discharge of the originally selected trial jury. The facts here are different.

First, there has been a significant passage of time. At that time -- at the time I instructed the jurors that they would be held pending the Second Circuit's decision, I hoped that the appeal would be resolved in an expedited fashion, and that we would be able to have the trial rescheduled for spring. On that note, I told the jurors to expect to be called back in perhaps three to six months. However, appellate arguments were not heard until May 11th, 2017, and a decision was not issued until August 18th, 2017. Due to the petition for rehearing en banc, which was denied, the mandate did not return to this Court until October 19th, 2017. Trial is now scheduled for December 5th, 2017, one year after selection. This is a far cry from the two days discussed in the Downum case.

Further, in the time since jury selection, the subject matter at issue in this case has been very much in the news, locally and nationally. From coverage involving local law enforcement officers, to numerous nationwide prosecutions and demonstrations, to the NFL kneeling protests, excessive force by

the police has been an unavoidable topic in America. For this reason, I do not think that a jury panel chosen in December 2016 would be the same panel if we were to recall them in December of 2017. Although I advised them to avoid the news, it would have been almost impossible to avoid exposure to such a widespread topic. That alone distinguished this case from Awadallah.

Instead, having reviewed all the arguments and the relevant law, I find that it is within my discretion to release the not-yet-impaneled jurors, and that doing so is in the best interest of both sides here. Accordingly, I will be directing the jury administrator to notify the 13 individuals selected for in December 2016 that their service is complete. A new venire will be called for jury selection on or about December 5th.

Those are my rulings.

Okay. Mr. Personius, Mr. Connors, I'm optimistic that December 5th is a go date. And I'm involved in a case which I think is going to speed up a little bit more than I had originally thought it was going to take place. But even it does extend close to that December 15th -- the 5th date, the December 5th date will be day to day until I get that one behind us, all right, because I think, out of fairness to the Defendants in this case and the Government, we need to put it behind us.

That's essentially where I'm at. I don't think there is anything else that I have on my checklist.

Okay. Mr. Connors, anything.

**MR. CONNORS:** I didn't quite understand what you meant by day to day, Your Honor.

**THE COURT:** Well, for example, if the jury is deliberating on December 5th by chance, all right, I'd prefer to wait until maybe December 6th, rather than select a jury and overlap with deliberations, something along those lines, so it would be December 6th, maybe December 7th, but we would start as soon as I can bring Green/Black to a conclusion.

**MR. CONNORS:** And how soon would you then notify the prospective jurors to come in to constitute the panel?

**THE COURT:** Well, the 5th is a Tuesday.

**COURT CLERK:** Right.

**THE COURT:** All right. So they would know on Monday, right?

**MR. CONNORS:** And they would just call in then, from that point on?

**THE COURT:** Yes. Every evening at 5:00 they're instructed to call.

**MR. CONNORS:** And we would be then provided with the names of the prospective jurors, I think it was a week in advance last time or several days in advance.

**THE COURT:** Yeah. I mean, I don't remember the exact number of days, but I will get it to you certainly in time for you to take look at it and do what you have to do.

**MR. CONNORS:** Thank you.

And one question, a follow-up on the Brady application regarding the arrest records of the subsequent arrests of some of the witnesses for the Government, Campbell, for example, would be one that we articulated in our motion. We have not received any of the documents that deal with his arrests for the contempt charge and the obstruction of breathing charge, and we haven't received those yet.

**THE COURT:** All right. Do you have Campbell's work?

**MR. MANGO:** No, Judge, we don't have it. We're not going to go out and seek something that is irrelevant anyway, especially there's -- it's not admissible. There's no conviction.

**THE COURT:** All right. Get an arrest record. You can get it and turn it over. That's all you need to do.

**MR. MANGO:** Well, we've given the arrest record.

**THE COURT:** That's what you want, right?

**MR. MANGO:** That shows he was arrested. We've given the criminal history. That's the arrest record.

**MR. CONNORS:** Okay. I'm led to believe there are accusatory instruments that contain supporting depositions, statements made by Campbell, things of that nature, that we don't yet have.

**MR. MANGO:** We don't believe any of that exists.

**THE COURT:** All right. If they don't have it, then

they can't turn it over.

All right. I think we're good.

**MR. PERSONIUS:** Your Honor, I have a couple of questions, if I may.

**THE COURT:** Sure, absolutely.

**MR. PERSONIUS:** Clarification on your ruling.

**THE COURT:** How can I resist such an impassioned, nice request, Mr. Personius.

**MR. PERSONIUS:** With your ruling regarding the admissibility of the civil suit, can the Government be directed on some dates before we start trial to let us know whether or not they intend to pursue that theory so we know whether or not to prepare that argument, including for opening statements?

**THE COURT:** Sure.

**MS. BAUMGARTEN:** We're not going to talk about it in opening statements, Judge, I can tell you that, so we certainly won't talk about it in opening.

**THE COURT:** Okay.

**MR. PERSONIUS:** Well, is it going to come up during the trial or is that an if-come?

**THE COURT:** Well, I don't know. Are you intending to raise it at trial?

**MR. PERSONIUS:** You know what, Judge, these are theory matters that we're going to go through and we're going to get ready for trial. I've never had a Court actually tell me that I

have to elucidate and provide all the information of all the theories for everything to the defense.

They know what our position is on the case. They know that we've fought admissibility, and we initially agreed to have nobody talk about the civil case. It wouldn't have been the forefront of the Government's perspective to have engaged in any of this dialogue.

And, to the extent that the defense wants to open the door, I stand firm, Judge, about you can't just provide this little bit of information to the jury that there was a civil case without providing them the whole picture, and the case law that I cited supports that.

**THE COURT:** Well, I don't think anybody's arguing with that.

But, you know, the Government's theory -- and this has been a sensitive issue of discussion throughout, and getting ready for this trial, if you're not going to argue in your opening statement the matter of a civil lawsuit, it shouldn't come up in the Government's direct case. If the door's open, that's entirely a different story. I mean, you're not bound to not bring it up if it's appropriate to do, if the door's opened for that. But if your theory includes the civil case -- and I'm assuming it doesn't, right, because otherwise you'd be arguing it in your opening statement.

**MS. BAUMGARTEN:** Correct. Because the Government's

theory has always been that the proper person who actually did the shooting was Mr. Krug, and he's charged with such, and Mr. Wendel was egging him on, shoot him in the balls or you should have shot him in the balls. We've always maintained that, Judge.

So this idea about somehow that the civil suit would have provided incentive to a witness to fabricate that to bring in more defendants, rather than the actual shooter, is poppycock. And we're not saying that that -- we're saying, and our witnesses will say, that the right person has been charged with the shooting, Judge. Mr. Kwiatkowski didn't shoot him and no witness is going to say he did.

**MR. PERSONIUS:** Judge, I didn't state my concern clearly, and I apologize.

The whole rationale for our motion, that I think you agreed to, is not that the Government is going to bring up the civil case; it's that the Government is going to fashion an argument at some point in the case that, if Gregory Kwiatkowski was the shooter because of how these individuals were mistreated by him at the scene, they would have every incentive to point the finger at Kwiatkowski rather than at Detective Krug and Officer Wendel.

Are they going to argue that at any point during the case? That's all we're asking.

**THE COURT:** Well, I mean, how can you even tell at

this point in time. I mean, that's speculative. Everybody knows what the ruling is.

If it comes up in a fashion where an argument is a logical sequitur, you deal with it at that time. I mean, you can't predict where all of this is going to go. I mean, everybody knows what the issues are. When they play out, I'll make the appropriate rulings on motions.

I'm not going to bind anybody in advance to say, well, you know, we think it's going to go out this way, you know, and so we're only going to argue this and we preclude our ability to argue that. That's not going to happen. We'll have to see how it plays out.

**MR. PERSONIUS:** And did you still want us to the brief the settlement issue on the days you provided, given the Government's statement? If you do, I just want to clarify.

**THE COURT:** Well, yeah, that's why I mentioned it. I mean, if you want to do it. If you don't, okay, but you're given the opportunity to do it, and I'll take the submissions. All right.

**MR. PERSONIUS:** And as far as your decision on the selected jury of 13 individuals -- I'm not second guessing your decision at all, I respect that, and I know you have a lot of discretion -- rather than assume that there's one of the 13 or more of the 13 who would be ineligible to sit, would you consider communicating with the 13 jurors to see if there's any

chance that all 13 would be available to sit?

**THE COURT:** No. No. My decision is as it stands.

I mean, you know, there's a proper basis under the venire rules for jury selection that home care exceptions can be granted, you know, in the case of a recent birth or whatever, but, you know, obviously all of the factors that have taken place, including the duration of this case, affects the 13 individuals to some extent, and the likelihood that one or more will have substantially changed from the standpoint of what they were, who they were, you know, a year ago, I think is inevitable, and I'm not going to go any further. I think the circumstances mandate and warrant that we start again with jury selection.

**MR. PERSONIUS:** All right. And then my last question, Judge, is because we're in effect starting the process over, should any date be set prior to trial for submission of whether it's an amended witness list or an amended exhibit list, supplemental trial memo, should we have a date or dates?

**THE COURT:** Yeah. I think that makes sense. I mean, everybody gets a chance to refresh, okay, so out of fundamental fairness, I think if there's any changes in witness lists, exhibits, 3500 material, jury charges, or the like, one week before.

So what would that date be, Ms. Labuzetta. You got a calendar there.

**COURT CLERK:** Judge, actually that would be -- we start the 5th. That would be the 28th of November.

**MR. PERSONIUS:** All right. The 28th.

**THE COURT:** The 28th. All right.

**MR. CONNORS:** In your pretrial order last time you identified five particular topics. I assume the same five topics would be in play. If there's any changes, you would want the responses a week before we begin trial.

**THE COURT:** Okay. Honestly, I don't remember what those five are.

**MR. CONNORS:** You've identified most of them: Trial brief 404(b), motions in limine, responses, replies, exhibit lists.

**MR. MANGO:** Well, Judge, I think we've covered most of the motions in limine. I don't imagine we're going to start re-litigating motions in limine one week before the trial. That's what we've doing for the past couple of months.

**THE COURT:** Well, I agree with that. But motions in limine, if something comes up last-minute basis, I'll take a look at it.

But look at that list, refresh to the extent -- I mean, it's obviously in your best interest to make sure that you're current, in any event.

**MS. BAUMGARTEN:** We usually turn over the exhibits, Judge, in advance. Even though we might do a formal list, we

usually turn over, if there's additional exhibits, as we do them. I don't usually keep them all. They get a lot of e-mails from us.

**THE COURT:** Well, make sure it's done here, specifically.

**MS. BAUMGARTEN:** Will do, Judge.

**THE COURT:** And if you don't do it, make sure Mr. Mango does it.

**MR. MANGO:** I'm on it, Judge.

**COURT CLERK:** Judge, we're going to have an issue regarding JERS too, because if there's any changes I need to know exactly what's replacing what and what's addition and what will be deleted.

**MR. MANGO:** We'll make it very clear.

**COURT CLERK:** All right. I do need to know that because we don't want to mess with that.

**MS. BAUMGARTEN:** JERS; not jurors. It's J-E-R-S?

**THE CLERK:** It's J-E-R-S.

**THE COURT:** Have you have seen the system?

**MS. BAUMGARTEN:** Yes.

**MR. MANGO:** We went back to about a year ago, Judge.

**THE COURT:** It's changed.

**COURT CLERK:** It changed. It does a lot more now, because you can listen to the audio recordings, you can stop, you can pause, you can search exhibits, and everything. So if

you want to search for a name, you can search all the exhibits for a name and stuff, so you're probably going to want to come in and look at it.

**MR. PERSONIUS:** We'll arrange, I think, to see that.

**THE COURT:** I really think you should. It has an amended tutorial that is very helpful. I mean, it's set at rapid speed, which for somebody that's a little bit of a dinosaur, it's a little bit difficult to go with, but it's very, very enlightening, very helpful. It's user-friendly. We have a larger monitor screen. We have a separate station also as well, so I think you'll like it. It's not a question of liking it, but it makes everything better and more fairer for both sides, in my judgment. Okay.

Okay. We're almost there, so hopefully we can get started December 5th. All right.

**MR. MANGO:** Thank you.

**MS. BAUMGARTEN:** Thank you.

**MR. PERSONIUS:** Thank you.

**THE COURT:** Thank you very much. Time is still excluded through that date.

**MS. BAUMGAURTEN:** Thank you, Judge.

**MR. CONNORS:** Thank you.

**THE COURT:** You're welcome.

(Proceedings concluded at 10:48 a.m.)

"I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter."

Mary E. Black

Signature — July 30, 2018
Date

MARY E. BLACK

## 1

**1000** [1] - 1:18
**10:17** [1] - 1:5
**10:48** [1] - 21:24
**1120** [1] - 1:23
**11th** [1] - 10:15
**12** [1] - 8:16
**12th** [1] - 8:17
**13** [7] - 11:11, 17:21, 17:23, 17:24, 17:25, 18:1, 18:7
**138** [1] - 1:15
**14-102** [1] - 2:1
**141** [1] - 8:4
**14202** [3] - 1:16, 1:20, 1:23
**14202-1687** [1] - 1:18
**147** [1] - 8:4
**15th** [2] - 6:10, 11:19
**18th** [1] - 10:16
**1963** [1] - 9:23
**1995** [1] - 5:5
**1996** [1] - 5:6
**19th** [1] - 10:18
**1:14-cr-00102-WMS-HK** [1] - 1:3

## 2

**2001** [1] - 8:8
**2006** [1] - 9:6
**2012** [1] - 8:4
**2016** [5] - 8:15, 8:17, 9:9, 11:2, 11:12
**2017** [8] - 1:5, 6:11, 6:24, 10:15, 10:16, 10:18, 10:19, 11:4
**2018** [1] - 22:4
**2100** [1] - 1:20
**22nd** [1] - 6:11
**239** [1] - 9:5
**242** [1] - 8:8
**28(j** [1] - 7:21
**28th** [3] - 19:2, 19:3, 19:4
**2d** [1] - 9:5

## 3

**30** [1] - 22:4
**3500** [1] - 18:22
**372** [1] - 9:23

## 4

**404(b** [1] - 19:12
**43** [1] - 5:5
**457** [1] - 9:5

## 5

**524** [1] - 6:24
**5:00** [1] - 12:18
**5th** [10] - 2:21, 10:19, 11:13, 11:16, 11:19, 11:20, 12:5, 12:12, 19:2, 21:15

## 6

**6** [1] - 8:15
**62** [1] - 5:4
**63** [1] - 5:4
**67** [1] - 5:5
**673** [1] - 8:4
**6th** [2] - 12:6, 12:8

## 7

**7** [1] - 8:15
**716** [1] - 1:24
**734** [1] - 9:23
**736** [1] - 9:23
**7th** [1] - 12:8

## 8

**8** [1] - 1:5
**848** [1] - 6:24
**853-5600** [1] - 1:24
**89** [1] - 8:8

## 9

**90** [1] - 5:5
**95** [1] - 8:8

## A

**a.m** [2] - 1:5, 21:24
**Aaron** [1] - 2:9
**AARON** [1] - 1:13
**ability** [1] - 17:10
**able** [2] - 8:24, 10:12
**above-entitled** [1] - 22:2
**absent** [1] - 7:7
**absolutely** [1] - 14:5
**accordingly** [3] - 5:21, 8:8, 11:10
**accusatory** [1] - 13:21
**actions** [1] - 5:9
**actual** [1] - 16:8
**addition** [1] - 20:12
**additional** [4] - 4:18, 8:24, 9:10, 20:1
**address** [1] - 8:5
**addressed** [1] - 9:19
**administrator** [1] - 11:11
**admissibility** [4] - 5:15, 6:9, 14:10, 15:4
**admissible** [5] - 5:3, 5:17, 6:21, 8:7, 13:12
**admission** [1] - 4:5
**admit** [1] - 4:1
**admitted** [2] - 5:13, 6:7
**advance** [4] - 12:22, 17:8, 19:25
**advances** [1] - 5:18
**advised** [1] - 11:4
**affects** [1] - 18:7
**ago** [2] - 18:10, 20:21
**agree** [1] - 19:18
**agreed** [2] - 15:4, 16:16
**agreement** [1] - 6:17
**allegations** [1] - 4:24
**alleged** [10] - 3:12, 3:17, 4:2, 4:6, 4:13, 4:16, 4:22, 5:13, 5:18, 7:11
**allow** [1] - 6:2
**allowed** [4] - 4:11, 4:18, 5:12, 5:14
**almost** [2] - 11:5, 21:14
**alone** [1] - 11:6
**alternate** [2] - 8:16, 9:11
**amended** [3] - 18:17, 21:6
**Amendment** [1] - 7:6
**America** [2] - 2:2, 11:1
**anyway** [1] - 13:11
**apologize** [1] - 16:14
**appeal** [2] - 8:14, 10:11
**appealed** [1] - 6:20
**appeals** [1] - 7:22
**APPEARANCES** [1] - 1:11
**Appellate** [1] - 7:21
**appellate** [3] - 8:1, 8:3, 10:14
**application** [1] - 13:2
**appropriate** [2] - 15:21, 17:7
**argue** [8] - 4:16, 4:21, 6:22, 7:12, 15:17, 16:23, 17:10, 17:11
**argues** [3] - 5:10, 5:11, 9:14
**arguing** [3] - 9:18, 15:13, 15:23
**argument** [9] - 5:8, 5:23, 7:16, 7:20, 7:22, 7:23, 14:13, 16:18, 17:3
**arguments** [4] - 3:9, 10:14, 11:7
**arisen** [1] - 8:20
**arrange** [1] - 21:4
**arrest** [6] - 3:17, 5:20, 13:3, 13:14, 13:16, 13:19
**arrested** [1] - 13:18
**arrests** [2] - 13:3, 13:6
**articulated** [1] - 13:5
**aside** [1] - 9:21
**Assistant** [1] - 1:14
**Associates** [1] - 1:22
**assume** [2] - 17:23, 19:6
**assuming** [1] - 15:23
**attempt** [3] - 5:6, 5:7, 5:24
**Attorney** [1] - 1:13
**attorney** [1] - 6:19
**attorney-client** [1] - 6:19
**Attorneys** [1] - 1:14
**audio** [1] - 20:24
**August** [1] - 10:16
**automatically** [2] - 8:25, 9:17
**available** [2] - 9:8, 18:1
**Avenue** [1] - 1:15
**avoid** [2] - 11:4, 11:5
**Awadallah** [4] - 9:2, 9:13, 9:21, 11:6

## B

**balls** [2] - 16:3, 16:4
**banc** [1] - 10:17
**Barret** [10] - 6:24, 7:4, 7:9, 7:14, 7:16, 7:17, 7:19, 7:23, 7:24, 8:5
**based** [3] - 5:9, 5:16, 8:25
**basis** [3] - 3:22, 18:3, 19:19
**Baumgarten** [1] - 2:7
**BAUMGARTEN** [10] - 1:14, 2:25, 3:3, 14:15, 15:25, 19:24, 20:6, 20:17, 20:20, 21:17
**BAUMGAURTEN** [2] - 2:6, 21:21
**BEFORE** [1] - 1:9
**begin** [1] - 19:8
**behind** [2] - 11:20, 11:23
**Ben** [1] - 8:7
**bench** [1] - 2:19
**best** [2] - 11:9, 19:22
**better** [1] - 21:12
**between** [1] - 6:15
**bias** [2] - 5:18, 6:7
**bind** [1] - 17:8
**birth** [1] - 18:5
**bit** [4] - 11:17, 15:10, 21:7, 21:8
**BLACK** [2] - 1:21, 22:7
**blame** [1] - 5:9
**Blum** [1] - 5:4
**bolstered** [1] - 4:19
**bound** [2] - 7:18, 15:20
**Brady** [4] - 3:10, 3:14, 3:24, 13:2
**Brady/Giglio** [1] - 3:11
**breathing** [1] - 13:7
**brief** [4] - 5:14, 6:10, 17:13, 19:12
**briefed** [1] - 6:25
**briefing** [1] - 6:8
**bring** [4] - 12:9, 15:21, 16:7, 16:16
**broader** [1] - 8:6
**brought** [1] - 4:3
**Brown** [1] - 8:3
**Buffalo** [7] - 1:4, 1:16, 1:18, 1:20, 1:23, 4:3, 4:20
**Building** [2] - 1:18, 1:23

## C

**calendar** [1] - 18:25
**camera** [3] - 3:16, 3:19, 3:20
**Campbell** [2] - 13:4, 13:22
**Campbell's** [1] - 13:9
**care** [1] - 18:4
**case** [25] - 2:4, 4:3, 4:19, 7:12, 7:23, 8:14, 8:16, 9:10, 9:21, 10:20, 10:22, 11:6, 11:16, 11:22, 15:3, 15:5, 15:11, 15:19, 15:22, 16:17, 16:18, 16:24, 18:5, 18:7
**cases** [2] - 4:25, 5:7
**caution** [1] - 6:1
**Centre** [1] - 1:15

**certainly** [2] - 12:24, 14:16
**certify** [1] - 22:1
**chance** [3] - 12:5, 18:1, 18:20
**changed** [3] - 18:9, 20:22, 20:23
**changes** [3] - 18:21, 19:7, 20:11
**charge** [2] - 13:7
**charged** [2] - 16:2, 16:10
**charges** [1] - 18:22
**checklist** [1] - 11:25
**choose** [1] - 9:3
**chosen** [3] - 8:19, 9:13, 11:2
**Circuit** [8] - 5:5, 5:6, 6:20, 6:24, 7:4, 7:20, 8:4, 8:8
**Circuit's** [2] - 7:19, 10:10
**circumstance** [1] - 10:5
**circumstances** [1] - 18:12
**cite** [2] - 4:25, 7:16
**cited** [3] - 5:16, 7:24, 15:12
**cites** [1] - 9:21
**City** [2] - 4:3, 8:3
**civil** [18] - 4:2, 4:8, 4:12, 4:17, 4:24, 5:12, 5:17, 5:24, 6:3, 6:7, 6:9, 14:10, 15:5, 15:10, 15:18, 15:22, 16:6, 16:17
**clarification** [1] - 14:6
**clarify** [1] - 17:15
**clear** [1] - 20:14
**clearly** [1] - 16:14
**CLERK** [7] - 2:1, 12:13, 19:1, 20:10, 20:15, 20:18, 20:23
**client** [1] - 6:19
**close** [1] - 11:19
**closed** [5] - 8:3, 8:6, 9:5, 9:16, 10:5
**co** [5] - 3:12, 6:15, 7:5, 7:7, 7:15
**co-defendant** [3] - 3:12, 7:5, 7:7
**co-defendants** [2] - 6:15, 7:15
**common** [1] - 7:15
**communicating** [1] - 17:25
**complete** [3] - 8:21, 9:3, 11:12
**completed** [1] - 3:20
**complicated** [1] - 8:13
**complied** [1] - 3:14
**compromise** [1] - 9:12
**computer** [1] - 1:25
**concern** [1] - 16:13
**concluded** [1] - 21:24
**conclusion** [1] - 12:9
**conditional** [1] - 4:10
**CONFERENCE** [1] - 1:6
**confidences** [1] - 7:8
**Connors** [4] - 2:13, 2:14, 11:15, 12:1
**CONNORS** [12] - 1:17, 1:17, 2:13, 12:2, 12:10, 12:16, 12:20, 13:1, 13:20, 19:5, 19:11, 21:22
**consider** [1] - 17:25
**considering** [1] - 9:8
**consisting** [1] - 8:16
**constitute** [2] - 10:4, 12:11
**contacted** [1] - 9:6
**contain** [1] - 13:21
**contempt** [1] - 13:7
**contending** [1] - 3:13
**continue** [1] - 5:10
**continues** [1] - 8:11
**conversation** [4] - 6:14, 6:18, 6:21, 6:23
**conviction** [2] - 9:24, 13:13
**cooperation** [1] - 7:15
**copy** [1] - 2:25
**correct** [2] - 15:25, 22:1
**counsel** [2] - 4:7, 7:6
**couple** [2] - 14:3, 19:17
**Court** [5] - 1:21, 9:20, 9:24, 10:17, 14:25
**court** [3] - 7:25, 8:1, 9:25
**COURT** [43] - 1:1, 2:1, 2:3, 2:8, 2:11, 2:14, 2:17, 3:2, 3:5, 12:4, 12:12, 12:13, 12:14, 12:18, 12:23, 13:9, 13:14, 13:17, 13:25, 14:5, 14:7, 14:14, 14:18, 14:21, 15:13, 16:25, 17:16, 18:2, 18:19, 19:1, 19:4, 19:9, 19:18, 20:4, 20:7, 20:10, 20:15, 20:19, 20:22, 20:23, 21:5, 21:19, 21:23
**court's** [1] - 8:3
**coverage** [1] - 10:23
**covered** [2] - 6:19, 19:14
**criminal** [3] - 2:1, 4:23, 13:19
**critical** [2] - 5:3, 7:9
**cry** [1] - 10:19
**current** [1] - 19:23

## D

**date** [9] - 2:21, 10:2, 11:16, 11:19, 11:20, 18:16, 18:18, 18:24, 21:20
**Date** [1] - 22:5
**dates** [2] - 14:11, 18:18
**days** [5] - 10:3, 10:20, 12:22, 12:24, 17:14
**de** [1] - 6:20
**deal** [2] - 13:6, 17:4
**December** [17] - 2:21, 8:15, 8:17, 9:9, 10:19, 11:2, 11:3, 11:12, 11:13, 11:16, 11:19, 11:20, 12:5, 12:6, 12:8, 21:15
**decided** [1] - 8:1
**decision** [13] - 3:21, 4:5, 5:10, 6:4, 6:6, 6:20, 7:19, 7:22, 10:10, 10:15, 17:20, 17:22, 18:2
**Defendant** [3] - 1:17, 3:12, 9:17
**defendant** [2] - 7:5, 7:7
**defendant's** [1] - 5:4
**Defendants** [20] - 1:8, 2:16, 3:15, 3:17, 4:1, 4:10, 4:16, 4:19, 4:21, 5:13, 5:16, 5:23, 6:15, 6:16, 6:22, 7:12, 7:15, 7:19, 8:23, 11:22
**defendants** [5] - 4:25, 6:13, 7:15, 9:22, 16:8
**Defendants'** [4] - 6:10, 6:17, 6:25, 7:6
**defense** [12] - 2:12, 3:25, 4:7, 4:11, 5:4, 6:5, 6:17, 7:7, 7:8, 7:13, 15:2, 15:8
**definitively** [1] - 7:14
**Delaware** [1] - 1:15
**delay** [1] - 9:22
**deleted** [1] - 20:13
**deliberating** [1] - 12:5
**deliberations** [1] - 12:7
**demonstrate** [1] - 6:7
**demonstrations** [1] - 10:25
**denied** [4] - 3:25, 8:9, 8:25, 10:17
**Department** [1] - 4:20
**depositions** [1] - 13:21
**desired** [1] - 9:4
**Detective** [1] - 16:21
**dialogue** [1] - 15:7
**different** [2] - 10:7, 15:20
**difficult** [1] - 21:8
**dinosaur** [1] - 21:8
**dire** [1] - 8:24
**direct** [3] - 4:6, 6:5, 15:19
**directed** [1] - 14:10
**directing** [1] - 11:10
**directly** [1] - 6:3
**disagree** [1] - 7:14
**discharge** [1] - 10:6
**discharged** [1] - 9:25
**disciplinary** [1] - 3:20
**disclosure** [2] - 3:22, 3:25
**discretion** [2] - 11:8, 17:23
**discussed** [1] - 10:20
**discussion** [1] - 15:16
**distinguish** [1] - 5:7
**distinguishable** [1] - 7:17
**distinguished** [1] - 11:6
**DISTRICT** [4] - 1:1, 1:1, 1:10, 1:10
**District** [1] - 9:5
**district** [1] - 7:25
**Docket** [1] - 1:2
**documents** [2] - 3:15, 13:6
**done** [1] - 20:4
**door** [1] - 15:9
**door's** [2] - 15:19, 15:21
**doubt** [1] - 9:7
**Downum** [2] - 9:23, 10:20
**driven** [1] - 4:22
**due** [4] - 6:10, 6:11, 9:15, 10:16
**duration** [1] - 18:7
**during** [4] - 5:20, 7:22, 14:19, 16:23
**duties** [1] - 3:14

## E

**e-mails** [1] - 20:2
**effect** [1] - 18:15
**egging** [1] - 16:3
**either** [1] - 9:12
**elucidate** [1] - 15:1
**en** [1] - 10:16
**enforcement** [1] - 10:24
**engaged** [1] - 15:6
**enlightening** [1] - 21:9
**entirely** [1] - 15:20
**entitled** [1] - 22:2
**especially** [2] - 9:8, 13:12
**ESQ** [5] - 1:12, 1:13, 1:14, 1:17, 1:19
**essentially** [2] - 9:1, 11:24
**evening** [1] - 12:18
**event** [2] - 5:22, 19:23
**evidence** [10] - 4:2, 4:5, 4:11, 5:2, 5:12, 5:17, 5:24, 6:2, 6:6
**evidentiary** [2] - 8:20, 9:16
**exact** [1] - 12:23
**exactly** [1] - 20:12
**examination** [1] - 4:6
**example** [2] - 12:4, 13:4
**exceptions** [1] - 18:4
**excerpt** [1] - 7:22
**excessive** [2] - 5:20, 10:25
**excluded** [1] - 21:20
**exhibit** [2] - 18:17, 19:12
**exhibits** [5] - 18:22, 19:24, 20:1, 20:25, 21:1
**exists** [1] - 13:24
**expect** [1] - 10:13

**expedited** [1] - 10:11
**exposure** [2] - 4:19, 11:5
**expressly** [2] - 8:1, 8:5
**extend** [1] - 11:19
**extent** [4] - 5:21, 15:8, 18:8, 19:21
**extraordinary** [1] - 10:5

## F

**F.3d** [5] - 5:4, 5:5, 6:24, 8:4, 8:8
**fabricate** [2] - 5:2, 16:7
**factors** [1] - 18:6
**facts** [2] - 3:7, 10:7
**fairer** [1] - 21:12
**fairness** [2] - 11:21, 18:21
**far** [2] - 10:19, 17:20
**fashion** [3] - 10:11, 16:17, 17:3
**Federal** [2] - 1:15, 7:20
**file** [2] - 3:20, 7:1
**filed** [2] - 3:11, 8:12
**filing** [1] - 7:2
**finally** [1] - 8:10
**finger** [2] - 4:15, 16:21
**firm** [1] - 15:9
**first** [1] - 10:8
**five** [4] - 2:24, 19:6, 19:10
**follow** [3] - 7:18, 9:12, 13:2
**follow-up** [1] - 13:2
**following** [1] - 8:24
**FOR** [1] - 1:10
**force** [2] - 5:20, 10:25
**forefront** [1] - 15:6
**foregoing** [1] - 22:1
**formal** [1] - 19:25
**former** [2] - 7:5, 7:7
**forth** [1] - 9:1
**fought** [1] - 15:4
**friendly** [1] - 21:9
**full** [1] - 9:14
**fully** [2] - 3:14, 6:25
**fundamental** [1] - 18:20

## G

**gallery** [1] - 2:18
**germane** [1] - 6:3
**given** [4] - 13:16, 13:18, 17:14, 17:18
**Government** [17] - 3:13, 3:16, 4:12, 5:6, 5:11, 5:18, 5:22, 6:19, 7:9, 7:11, 9:2, 9:14, 11:22, 13:4, 14:10, 16:16, 16:17
**Government's** [8] - 6:11, 7:2, 8:18, 15:6, 15:15, 15:19, 15:25, 17:15
**granted** [5] - 5:15, 5:21, 6:17, 7:1, 18:5
**granting** [1] - 3:21
**Green/Black** [1] - 12:9
**Gregory** [1] - 16:18
**GREGORY** [1] - 1:6
**grounds** [1] - 6:18
**guessing** [1] - 17:21
**guilty** [4] - 4:14, 6:16, 7:5, 7:10

## H

**health** [1] - 3:18
**heard** [1] - 10:15
**held** [3] - 7:4, 7:14, 10:10
**helpful** [2] - 21:6, 21:9
**histories** [1] - 3:17
**history** [1] - 13:19
**Hoke** [1] - 5:5
**holding** [1] - 10:3
**home** [1] - 18:4
**honestly** [1] - 19:9
**Honor** [5] - 2:6, 2:13, 2:16, 12:3, 14:3
**HONORABLE** [1] - 1:9
**hoped** [1] - 10:10
**hopefully** [1] - 21:14
**Hunt** [1] - 1:22

## I

**idea** [1] - 16:6
**identified** [2] - 19:6, 19:11
**identify** [2] - 4:17, 5:19
**if-come** [1] - 14:20
**imagine** [1] - 19:15
**impaneled** [2] - 10:3, 11:9
**impartiality** [2] - 9:15, 9:19
**impassioned** [1] - 14:7
**impliedly** [1] - 8:2
**impossible** [1] - 11:5
**Inc** [1] - 1:22
**incentive** [2] - 16:7, 16:20
**incentivized** [1] - 4:17
**includes** [1] - 15:22
**including** [2] - 14:13, 18:7
**individuals** [4] - 11:11, 16:19, 17:21, 18:8
**ineligible** [1] - 17:24
**inevitable** [1] - 18:11
**information** [5] - 3:11, 3:18, 3:23, 15:1, 15:10
**informed** [1] - 8:19
**ingredient** [1] - 7:9
**instead** [3] - 4:16, 5:9, 11:7
**instructed** [2] - 10:9, 12:19
**instruction** [1] - 9:20
**instruments** [1] - 13:21
**intact** [1] - 6:4
**intend** [1] - 14:12
**intending** [1] - 14:21
**intends** [1] - 5:8
**interest** [3] - 9:2, 11:10, 19:22
**internal** [1] - 3:19
**introduce** [2] - 4:11, 5:24
**introduces** [2] - 4:12, 5:22
**involved** [1] - 11:16
**involving** [1] - 10:23
**irrelevant** [1] - 13:11
**issue** [11] - 6:25, 7:3, 8:11, 8:20, 8:22, 9:15, 9:16, 10:22, 15:16, 17:14, 20:10
**issued** [2] - 3:21, 10:15
**issues** [2] - 8:2, 17:6

## J

**J-E-R-S** [1] - 20:18
**Jack** [1] - 1:22
**JAMES** [1] - 1:12
**JERS** [3] - 20:11, 20:17
**joint** [1] - 6:16
**JOSEPH** [1] - 1:7
**Joseph** [1] - 2:2
**JR** [1] - 1:12
**Judge** [19] - 2:9, 2:25, 3:4, 13:10, 14:16, 14:23, 15:9, 16:5, 16:11, 16:13, 18:15, 19:1, 19:14, 19:25, 20:6, 20:9, 20:10, 20:21, 21:21
**JUDGE** [1] - 1:10
**judgment** [1] - 21:13
**July** [1] - 22:4
**jurors** [15] - 8:16, 8:19, 8:23, 9:6, 9:10, 9:13, 9:15, 9:18, 10:9, 10:13, 11:9, 12:11, 12:21, 17:25, 20:17
**jury** [21] - 4:9, 8:11, 8:13, 8:15, 8:20, 9:3, 9:22, 9:25, 10:2, 10:6, 10:21, 11:2, 11:11, 11:13, 12:4, 12:6, 15:10, 17:21, 18:4, 18:12, 18:22
**Justice** [1] - 5:5
**Justice-Hoke** [1] - 5:5
**justifying** [1] - 10:6

## K

**Katie** [1] - 2:6
**keep** [1] - 20:2
**KENNEDY** [1] - 1:12
**key** [1] - 10:1
**kneeling** [1] - 10:25
**knows** [2] - 17:2, 17:6
**Krug** [7] - 2:2, 2:13, 4:17, 4:20, 6:13, 16:2, 16:21
**KRUG** [1] - 1:6
**Kwiatkowski** [8] - 3:12, 5:9, 5:19, 6:14, 7:10, 16:11, 16:18, 16:21
**KWIATKOWSKI** [1] - 1:6
**Kwiatkowski's** [5] - 3:18, 3:19, 4:13, 6:15, 7:12

## L

**Labuzetta** [1] - 18:24
**larger** [1] - 21:10
**last** [5] - 6:17, 12:22, 18:14, 19:5, 19:19
**last-minute** [1] - 19:19
**law** [3] - 10:23, 11:8, 15:11
**lawsuit** [1] - 15:18
**least** [2] - 9:7, 9:8
**led** [1] - 13:20
**letter** [1] - 7:21
**Liberty** [2] - 1:18, 1:23
**likelihood** [1] - 18:8
**limine** [4] - 19:12, 19:15, 19:16, 19:19
**line** [1] - 4:7
**lines** [1] - 12:7
**list** [4] - 18:17, 19:21, 19:25
**listen** [1] - 20:24
**lists** [2] - 18:21, 19:13
**litigating** [1] - 19:16
**litigation** [2] - 7:25, 8:2
**LLP** [2] - 1:17, 1:19
**local** [1] - 10:23
**locally** [1] - 10:23
**locked** [1] - 4:23
**logical** [1] - 17:4
**look** [4] - 12:25, 19:20, 19:21, 21:3

## M

**mails** [1] - 20:2
**Main** [1] - 1:20
**maintained** [1] - 16:4
**mandate** [7] - 7:18, 7:24, 8:3, 8:5, 8:6, 10:17, 18:12
**Mango** [3] - 2:9, 2:11, 20:8
**MANGO** [11] - 1:13, 2:9, 13:10, 13:16, 13:18, 13:24, 19:14, 20:9, 20:14, 20:21, 21:16
**MARY** [3] - 1:14, 1:21, 22:7
**material** [3] - 3:21, 3:23, 18:22
**matter** [3] - 10:22, 15:18, 22:2
**matters** [2] - 8:1, 14:24
**mean** [12] - 3:8, 12:23, 15:20, 16:25, 17:1, 17:4, 17:5, 17:17, 18:3, 18:19, 19:22, 21:6
**meant** [1] - 12:2
**mechanical** [1] - 1:25
**Melber** [1] - 1:19

**memo** [1] - 18:18
**memoranda** [1] - 8:12
**mental** [1] - 3:18
**mentioned** [1] - 17:16
**mess** [1] - 20:16
**mid** [1] - 7:5
**mid-trial** [1] - 7:5
**might** [1] - 19:25
**mind** [1] - 9:7
**minute** [1] - 19:19
**mistreated** [1] - 16:19
**Monday** [1] - 12:14
**monitor** [1] - 21:10
**months** [2] - 10:14, 19:17
**moot** [1] - 3:25
**morning** [5] - 2:6, 2:8, 2:9, 2:11, 2:14
**most** [2] - 19:11, 19:14
**motion** [8] - 5:15, 5:21, 6:12, 6:17, 6:25, 8:9, 13:5, 16:15
**motions** [12] - 2:20, 3:6, 3:7, 3:10, 3:11, 3:13, 3:25, 17:7, 19:12, 19:15, 19:16, 19:18
**motivated** [3] - 4:13, 5:8, 5:19
**motivations** [1] - 4:23
**motive** [2] - 5:1, 5:2
**MR** [33] - 2:9, 2:13, 2:15, 12:2, 12:10, 12:16, 12:20, 13:1, 13:10, 13:16, 13:18, 13:20, 13:24, 14:3, 14:6, 14:9, 14:19, 14:23, 16:13, 17:13, 17:20, 18:14, 19:3, 19:5, 19:11, 19:14, 20:9, 20:14, 20:21, 21:4, 21:16, 21:18, 21:22
**MS** [11] - 2:6, 2:25, 3:3, 14:15, 15:25, 19:24, 20:6, 20:17, 20:20, 21:17, 21:21
**must** [1] - 6:3

**N**

**name** [3] - 4:18, 21:1, 21:2
**names** [1] - 12:21
**nationally** [1] - 10:23
**nationwide** [1] - 10:24
**nature** [1] - 13:22
**need** [5] - 9:10, 11:22, 13:15, 20:11, 20:15
**never** [1] - 14:25
**NEW** [2] - 1:1, 1:10
**new** [3] - 9:14, 10:2, 11:12
**New** [6] - 1:4, 1:16, 1:18, 1:20, 1:23, 9:5
**news** [2] - 10:22, 11:4
**NFL** [1] - 10:25
**nice** [1] - 14:7
**nobody** [1] - 15:5
**not-yet-impaneled** [1] - 11:9
**Notary** [1] - 1:22
**note** [1] - 10:13
**notes** [1] - 7:11
**notice** [1] - 9:25
**notify** [2] - 11:11, 12:10
**November** [4] - 1:5, 6:10, 6:11, 19:2
**novo** [1] - 6:21
**number** [1] - 12:24
**numerous** [1] - 10:24

**O**

**obstruction** [1] - 13:7
**obtain** [1] - 9:4
**obviously** [2] - 18:6, 19:22
**occurred** [1] - 6:15
**October** [1] - 10:18
**OF** [3] - 1:1, 1:9, 1:10
**Officer** [1] - 16:22
**officers** [1] - 10:24
**once** [2] - 8:21, 9:3
**one** [12] - 8:16, 9:7, 9:8, 9:11, 10:19, 11:20, 13:2, 13:5, 17:23, 18:8, 18:22, 19:16
**open** [2] - 15:8, 15:19
**opened** [1] - 15:21
**opening** [7] - 5:23, 8:17, 14:13, 14:16, 14:17, 15:18, 15:24
**opportunity** [3] - 5:14, 9:3, 17:18
**opposes** [1] - 3:13
**optimistic** [1] - 11:15
**oral** [1] - 7:22
**order** [3] - 3:22, 7:24, 19:5
**originally** [2] - 10:6, 11:18
**otherwise** [1] - 15:23
**outside** [1] - 4:8
**outstanding** [1] - 2:20
**overlap** [1] - 12:7

**P**

**pages** [1] - 2:24
**paid** [1] - 5:12
**panel** [5] - 7:23, 9:9, 11:2, 11:3, 12:11
**part** [1] - 6:16
**particular** [1] - 19:6
**parties** [3] - 6:1, 6:8, 6:25
**passage** [1] - 10:8
**passing** [1] - 3:9
**past** [1] - 19:17
**pause** [1] - 20:25
**pending** [1] - 10:10
**peremptory** [1] - 9:4
**perhaps** [1] - 10:14
**person** [2] - 16:1, 16:10
**personal** [1] - 5:1
**PERSONIUS** [14] - 1:19, 2:15, 14:3, 14:6, 14:9, 14:19, 14:23, 16:13, 17:13, 17:20, 18:14, 19:3, 21:4, 21:18
**Personius** [4] - 1:19, 2:15, 11:15, 14:8
**perspective** [1] - 15:6
**persuaded** [1] - 5:17
**petition** [1] - 10:16
**picture** [1] - 15:11
**place** [2] - 11:18, 18:7
**Place** [1] - 1:20
**placing** [1] - 9:18
**Plaintiff** [2] - 1:3, 1:12
**play** [2] - 17:6, 19:7
**plays** [1] - 17:12
**plea** [1] - 6:16
**pled** [3] - 4:14, 7:5, 7:10
**point** [8] - 4:15, 5:23, 9:22, 12:17, 16:18, 16:20, 16:23, 17:1
**police** [1] - 11:1
**Police** [1] - 4:20
**poppycock** [1] - 16:9
**position** [2] - 10:1, 15:3
**possession** [1] - 3:15
**possible** [1] - 4:22
**potential** [2] - 4:19, 9:19
**precedent** [1] - 5:16
**preclude** [4] - 6:12, 6:14, 6:18, 17:10
**precluded** [1] - 6:23
**precludes** [1] - 8:2
**preclusion** [1] - 7:16
**predict** [1] - 17:5
**prefer** [1] - 12:5
**pregnant** [1] - 9:9
**prejudice** [1] - 7:11
**prejudicial** [1] - 7:14
**prepare** [1] - 14:13
**presence** [1] - 4:9
**present** [5] - 2:18, 3:8, 7:9, 7:12, 10:1
**presented** [1] - 7:19
**pretrial** [2] - 3:5, 19:5
**prevents** [1] - 7:25
**previously** [3] - 4:5, 5:11, 9:13
**privilege** [1] - 6:19
**privileged** [1] - 6:23
**Procedure** [1] - 7:21
**proceed** [1] - 8:13
**proceeding** [1] - 3:24
**proceedings** [1] - 22:2
**PROCEEDINGS** [1] - 1:9
**Proceedings** [2] - 1:25, 21:24
**process** [1] - 18:15
**produced** [1] - 1:25
**proffer** [2] - 4:8, 6:5
**proof** [1] - 8:18
**proper** [2] - 16:1, 18:3
**proposals** [1] - 8:12
**proposition** [1] - 5:1
**prosecution** [2] - 10:1, 10:4
**prosecutions** [1] - 10:24
**prosecutors** [1] - 2:4
**prospective** [2] - 12:11, 12:21
**protective** [1] - 3:21
**protests** [1] - 10:25
**provide** [2] - 15:1, 15:9
**provided** [4] - 3:16, 12:20, 16:7, 17:14
**providing** [2] - 3:14, 15:11
**Public** [1] - 1:22
**pursue** [2] - 4:7, 14:12
**put** [1] - 11:22
**putting** [1] - 9:13

**Q**

**questioning** [2] - 4:7, 9:19
**questions** [1] - 14:4
**quite** [1] - 12:2
**quote** [10] - 7:25, 8:3, 8:6, 9:2, 9:5, 9:16, 9:17, 10:5

**R**

**raise** [1] - 14:22
**rapid** [1] - 21:7
**rather** [4] - 12:6, 16:8, 16:21, 17:23
**rationale** [1] - 16:15
**Ray** [1] - 2:13
**RAYMOND** [1] - 1:6
**Raymond** [1] - 2:2
**re** [4] - 7:25, 8:2, 9:6, 19:16
**re-contacted** [1] - 9:6
**re-litigating** [1] - 19:16
**re-litigation** [2] - 7:25, 8:2
**readiness** [1] - 2:21
**reading** [1] - 7:21
**ready** [3] - 3:6, 14:25, 15:17
**really** [1] - 21:5
**reason** [1] - 11:2
**reasons** [1] - 9:1
**recalled** [1] - 9:22
**received** [2] - 13:6, 13:8
**receiving** [1] - 9:25
**recent** [1] - 18:5
**record** [5] - 2:5, 13:14, 13:16, 13:19, 22:2
**recorded** [1] - 1:25
**recordings** [1] - 20:24
**records** [1] - 13:3
**refamiliarizing** [1] - 2:4
**reference** [2] - 3:9,

5:11
**refresh** [2] - 18:20, 19:21
**regarding** [8] - 3:18, 4:2, 6:2, 6:9, 6:14, 13:3, 14:9, 20:11
**rehearing** [1] - 10:16
**related** [1] - 4:8
**relating** [1] - 3:12
**release** [1] - 11:8
**relevant** [3] - 3:15, 3:23, 11:8
**remain** [1] - 2:20
**remainder** [1] - 6:4
**remaining** [1] - 7:6
**remains** [1] - 6:4
**remember** [2] - 12:23, 19:9
**renew** [2] - 4:1, 6:13
**replacing** [1] - 20:12
**replies** [1] - 19:12
**reply** [2] - 7:1, 7:2
**Reporter** [1] - 1:21
**request** [7] - 4:1, 4:4, 4:10, 6:13, 8:23, 8:25, 14:8
**requested** [1] - 5:14
**rescheduled** [1] - 10:12
**reseat** [1] - 9:17
**reseated** [1] - 8:25
**reserve** [1] - 5:10
**reserved** [1] - 4:5
**resist** [1] - 14:7
**resolve** [1] - 7:23
**resolved** [3] - 8:2, 8:22, 10:11
**respect** [2] - 2:19, 17:22
**response** [1] - 6:11
**responses** [2] - 19:8, 19:12
**return** [1] - 10:17
**reveals** [1] - 7:13
**reversed** [2] - 6:20, 9:24
**review** [4] - 3:16, 3:19, 3:20, 6:21
**reviewed** [2] - 7:2, 11:7
**RODNEY** [1] - 1:19
**Rodney** [1] - 2:15
**rough** [1] - 4:14
**Rule** [2] - 7:20, 7:21
**rule** [3] - 3:6, 7:18, 7:24
**rules** [1] - 18:4
**ruling** [5] - 4:10, 6:3, 14:6, 14:9, 17:2
**rulings** [2] - 11:14, 17:7

## S

**scene** [1] - 16:20
**scheduled** [3] - 8:17, 10:2, 10:18
**screen** [1] - 21:10
**scribble** [1] - 3:3
**scribbling** [1] - 3:1
**sealed** [1] - 3:21
**search** [3] - 20:25, 21:1
**seated** [1] - 2:18
**second** [2] - 4:1, 17:21
**Second** [10] - 5:5, 6:20, 6:24, 7:4, 7:19, 7:20, 8:4, 8:8, 10:10
**see** [5] - 5:4, 8:7, 17:11, 17:25, 21:4
**seek** [2] - 3:11, 13:11
**seeks** [1] - 9:17
**select** [1] - 12:6
**selected** [7] - 8:15, 9:10, 9:25, 10:3, 10:6, 11:11, 17:21
**selection** [7] - 8:13, 9:14, 10:19, 10:21, 11:13, 18:4, 18:13
**sense** [1] - 18:19
**sensitive** [1] - 15:16
**separate** [1] - 21:10
**sequitur** [1] - 17:4
**serve** [1] - 8:24
**service** [2] - 8:20, 11:12
**set** [4] - 9:1, 9:12, 18:16, 21:6
**setting** [1] - 8:12
**settlement** [4] - 5:12, 5:15, 6:9, 17:14
**several** [3] - 3:5, 4:25, 12:22
**shared** [1] - 7:7
**shoot** [2] - 16:3, 16:11
**shooter** [4] - 4:15, 5:20, 16:8, 16:19
**shooters** [1] - 4:18
**shooting** [2] - 16:2, 16:11
**short** [1] - 6:8
**shot** [1] - 16:4
**show** [1] - 5:17
**showing** [1] - 7:7
**shows** [1] - 13:18
**side** [2] - 9:12, 9:21
**sides** [3] - 8:12, 11:10, 21:12
**Signature** [1] - 22:5
**significant** [1] - 10:8
**simply** [1] - 9:17
**sit** [2] - 17:24, 18:1
**six** [2] - 2:24, 10:14
**Sixth** [1] - 7:6
**SKRETNY** [1] - 1:9
**soon** [2] - 12:9, 12:10
**sought** [2] - 3:19, 4:7
**Southern** [1] - 9:5
**specific** [2] - 6:3, 6:5
**specifically** [3] - 3:16, 4:11, 20:5
**speculative** [2] - 5:3, 17:1
**speed** [2] - 11:17, 21:7
**spirit** [1] - 8:6
**spring** [1] - 10:12
**stand** [2] - 2:23, 15:9
**standing** [1] - 4:25
**standpoint** [1] - 18:9
**stands** [1] - 18:2
**start** [9] - 2:3, 3:1, 3:10, 8:18, 12:8, 14:11, 18:12, 19:2, 19:15
**started** [1] - 21:15
**starting** [2] - 10:2, 18:15
**state** [1] - 16:13
**statement** [4] - 2:19, 15:18, 15:24, 17:15
**statements** [4] - 8:18, 13:22, 14:13, 14:16
**STATES** [2] - 1:1, 1:10
**States** [10] - 1:13, 1:14, 2:1, 2:7, 2:10, 5:4, 6:24, 8:7, 9:1, 9:23
**station** [1] - 21:10
**STATUS** [1] - 1:6
**stenography** [1] - 1:25
**still** [3] - 2:20, 17:13, 21:19
**stop** [1] - 20:24
**story** [1] - 15:20
**strategically** [1] - 9:4
**strategy** [2] - 7:8, 7:13
**strikes** [1] - 9:4
**striking** [1] - 10:5
**stuff** [1] - 21:2
**subject** [2] - 3:24, 10:21
**submission** [1] - 18:16
**submissions** [1] - 17:18
**submit** [1] - 6:8
**subsequent** [1] - 13:3
**substantially** [1] - 18:9
**suggests** [1] - 8:6
**suit** [13] - 4:2, 4:8, 4:12, 4:17, 4:23, 4:24, 5:12, 5:17, 5:24, 6:3, 6:7, 14:10, 16:6
**summary** [1] - 7:24
**Supp** [1] - 9:5
**supplemental** [2] - 7:2, 18:18
**support** [2] - 7:1, 7:16
**supporting** [2] - 5:2, 13:21
**supports** [1] - 15:12
**Supreme** [1] - 9:24
**surface** [1] - 8:11
**sworn** [1] - 8:19
**Syracuse** [1] - 8:4
**system** [1] - 20:19

## T

**tactics** [1] - 7:8
**TERRENCE** [1] - 1:17
**terry** [1] - 2:13
**testimony** [6] - 6:5, 6:14, 6:18, 7:4, 7:13, 8:7
**THE** [39] - 1:9, 1:10, 2:3, 2:8, 2:11, 2:14, 2:17, 3:2, 3:5, 12:4, 12:12, 12:14, 12:18, 12:23, 13:9, 13:14, 13:17, 13:25, 14:5, 14:7, 14:14, 14:18, 14:21, 15:13, 16:25, 17:16, 18:2, 18:19, 19:4, 19:9, 19:18, 20:4, 20:7, 20:18, 20:19, 20:22, 21:5, 21:19, 21:23
**theories** [1] - 15:2
**theory** [9] - 4:12, 5:18, 5:22, 5:25, 14:12, 14:23, 15:15, 15:22, 16:1
**therefore** [3] - 3:24, 7:10, 8:4
**third** [1] - 4:4
**three** [2] - 6:16, 10:14
**throughout** [1] - 15:16
**today** [1] - 2:16
**topic** [2] - 11:1, 11:6
**topics** [2] - 19:6, 19:7
**Tower** [1] - 1:20
**TRANSCRIPT** [1] - 1:9
**transcript** [2] - 1:25, 22:1
**treatment** [1] - 4:14
**trial** [21] - 2:21, 2:22, 6:2, 7:5, 7:10, 9:24, 10:2, 10:6, 10:12, 10:18, 14:11, 14:20, 14:22, 14:25, 15:17, 18:16, 18:18, 19:8, 19:11, 19:16
**Tuesday** [1] - 12:12
**turn** [4] - 13:15, 14:1, 19:24, 20:1
**tutorial** [1] - 21:6
**two** [3] - 3:10, 10:3, 10:20

## U

**U.S** [1] - 9:23
**unavailability** [1] - 10:4
**unavoidable** [1] - 11:1
**under** [2] - 6:23, 18:3
**undermine** [1] - 5:24
**undermined** [1] - 4:20
**UNITED** [2] - 1:1, 1:10
**United** [10] - 1:13, 1:14, 2:1, 2:7, 2:10, 5:4, 6:24, 8:7, 9:1, 9:23
**up** [8] - 11:17, 13:2, 14:19, 15:19, 15:21, 16:16, 17:3, 19:19
**updated** [1] - 3:17
**USA** [1] - 1:2
**user** [1] - 21:9
**user-friendly** [1] - 21:9

## V

**value** [1] - 4:21
**venire** [5] - 8:11, 9:14, 9:18, 11:12, 18:4
**versus** [7] - 2:2, 5:4,

6:24, 8:3, 8:7, 9:1, 9:23
**victims** [10] - 3:12, 3:17, 4:2, 4:7, 4:13, 4:16, 4:22, 5:8, 5:13, 5:19
**view** [1] - 3:24
**violate** [1] - 7:6
**visibly** [1] - 9:9
**voir** [1] - 8:24

**W**

**wait** [1] - 12:6
**wants** [1] - 15:8
**warrant** [1] - 18:12
**week** [4] - 12:21, 18:22, 19:8, 19:16
**welcome** [1] - 21:23
**WENDEL** [1] - 1:7
**Wendel** [6] - 2:2, 2:15, 4:17, 6:13, 16:3, 16:22
**Wendel's** [1] - 4:20
**WESTERN** [2] - 1:1, 1:10
**whole** [3] - 9:4, 15:11, 16:15
**widespread** [1] - 11:5
**WILLIAM** [1] - 1:9
**wish** [1] - 9:12
**witness** [7] - 5:1, 10:2, 10:4, 16:7, 16:12, 18:17, 18:21
**witnesses** [3] - 4:21, 13:4, 16:10

**Y**

**year** [4] - 6:17, 10:19, 18:10, 20:21
**year's** [1] - 9:22
**YORK** [2] - 1:1, 1:10
**York** [6] - 1:4, 1:16, 1:18, 1:20, 1:23, 9:6

**Z**

**Zvi** [1] - 8:8